## WATSON v. MAGNOLIA PETROLEUM CO.
### No. 11644.

Court of Civil Appeals of Texas. Dallas.
Feb. 23, 1935.

Rehearing Denied March 30, 1935.

Geo. Sergeant and Garland Armstrong, both of Dallas, for plaintiff in error.

W. H. Francis, A. S. Hardwicke, and Russell Surles, all of Dallas, for defendant in error.

JONES, Chief Justice.

Appellant, W. Frank Watson, instituted this suit in a district court of Dallas county against appellee, Magnolia Petroleum Company, for damages alleged to have resulted from the breach of a contract. The case was tried to the court and a judgment rendered in favor of appellee. The appeal has been duly perfected to this court, and the following are the facts:

On November 12, 1931, appellant was erecting a gasoline filling station, on property owned by him in the city of Dallas. On said date, he entered into two written contracts with appellee, leasing the station to appellee for the consideration of the payment to appellant of 1 cent per gallon on all gasoline furnished the station by appellee, and sold through said station. Appellee was given the right to install on the leased premises any additional equipment which might be necessary and useful in the operation of the station.

The other contract provided that appellant should become a dealer agent for appellee's petroleum products at said station, for a term of one year, beginning December 15, 1931. In this contract, appellant agreed to use and operate said station and sell appellee's petroleum products, and no other, and agreed to use his best efforts to increase the sale and distribution of such products.

Sections 6 and 11 of this latter contract, necessary to a decision of this case, are:

"Sec. 6: As sole compensation to Dealer, Company agrees to allow the following commissions: (a) Gasoline: 2¢ per gallon when the spread between Company's tank wagon posted price and service station posted price schedules is 3¢ per gallon or less. (b) Gasoline: 2½¢ per gallon when the spread between Company's tank wagon posted price and service station posted price schedules is 4¢ per gallon. (c) Gasoline: 3¢ per gallon when the spread between the Company's tank wagon posted price and service station posted price schedules is 5¢ per gallon or more." (Subsection (d) applies to products other than gasoline, manufactured and furnished by appellee, in respect to which there is no controversy).

"Sec. 11: Dealer shall not transfer this contract in whole or in part without prior written consent of the Company. The breach by Dealer of any of the terms hereof terminates the same and Company may reenter and Dealer hereby agrees upon such termination to surrender such premises."

This contract, as to the commission schedules, was in force until about May 19, 1932, when, by a supplemental contract, appellee was allowed 2½ cents per gallon on sales of "standard" and "ethyl" gasoline. This change in commissions on the two grades of gasoline was to become effective May 1, 1932.

When these contracts were executed, appellee, for a long time, had manufactured and furnished to its dealers two grades of gasoline, given different names at various times, but will be designated here as "standard" and "ethyl" gasoline. Just prior to the execution of these contracts, appellee had begun the manufacture of a third and inferior grade of gasoline, also described by different names, but will be designated here as "blue" gasoline. From the evidence we infer that, at the time of the execution of these contracts, the manufacture and sale of "blue" gasoline had not emerged from the experimental stage. There was no "tank wagon posted price" on such gasoline when these contracts were entered into, nor when the station in question was completed, and the first delivery of gasoline was made by appellee to appellant on January 8, 1932.

This controversy has arisen over the construction of the term "gasoline," as used in subsection (a) of section 6, of the written contract. Appellee contends that the term "gasoline," as used in subsection (a), refers only to "standard" and "ethyl" gasoline, which were the grades that carried a "tank wagon posted price"; whereas, appellant contends that the term referred to all grades of gasoline manufactured and delivered by appellee, and included the "blue" gasoline. Appellant paid for gasoline on each delivery, as per the invoice presented to him at such time, and was allowed a commission, by the invoice presented by the tank driver, of 2 cents per gallon on all "standard" and "ethyl" gasoline, and a commission of 1 cent per gallon on all "blue" gasoline delivered. In addition to this, he was allowed to deduct as rental 1 cent per gallon on all gasoline delivered, as per the written contract, about which there is no contested issue on this appeal.

In September, 1932, appellant declined to receive any more "blue" gasoline, on the ground that appellee had breached its contract, in respect to the commission on such gasoline, in that it was only allowing him 1 cent per gallon commission, when it should have allowed him 2 cents per gallon. Appel-

lant .supplied, in place of "blue" gasoline, East Texas gasoline purchased from dealers other than appellee. When this fact became known to appellee, it wrote appellant a letter stating, in effect, that he had violated the contract, in the use of East Texas gasoline, and that, under section 11 the contract was canceled, and no more Magnolia petroleum products would be delivered to him. During the remainder of the time of the life of the contract, appellant bought all grades of gasoline, and all other petroleum products from dealers other than appellee.

Appellant instituted this suit to recover the alleged balance of commissions of 1 cent per gallon on all "blue" gasoline sold by him from January 8, 1932, to May 1, 1932, and 1½ cents per gallon on all "blue" gasoline sold by him from May 1, 1932, until appellee ceased to deliver "blue" gasoline. He also sought to recover commissions that he would reasonably have earned from the time appellee refused to deliver its petroleum products to him to December 15, 1932, the expiration date of the contract. The total of the items of damages amounted to an excess of $1,-000, as shown by the itemized statements attached as exhibits to appellant's petition.

Appellee's answer to the merits of appellant's suit is, to the effect, that the commission to be allowed appellant on the sale of gasoline was thoroughly discussed before the execution of the written contract, and that it was understood and agreed by the parties herein that appellant was to receive a commission of 2 cents on each gallon sold of "standard" and "ethyl" gasoline, and 1 cent on each gallon of "blue" gasoline; that "blue" gasoline was not being generally delivered to agents at the time of the execution of the written contract, for which reason the commission on such gasoline was not specified in the contract, but it was understood and agreed between the parties that a supplemental written contract would be executed, in respect to such commission on "blue" gasoline, at the time the first delivery of gasoline was made to appellant, and that this supplemental contract would allow the agreed commission of 1 cent per gallon on "blue" gasoline; that because of an oversight of appellee's agent in charge of this matter, the supplemental "blue" gasoline contract was not presented and signed, but the oral contract in respect to this commission was in force. It was also alleged in appellee's answer that, for seven months, appellant had been paid the commission of 1 cent per gallon on "blue" gasoline, and the contract commission on the other two grades of gasoline,

without any complaint on his part; that appellant's first complaint as to the commission on the "blue" gasoline was the latter part of July, 1932, and that thereafter he contended that he should have 2 cents commission on the "blue" gasoline, and accepted the 1 cent commission thereafter under protest. Appellee also alleged a breach of the contract by appellant in refusing to accept "blue" gasoline under the contract commission of 1 cent, and in buying East Texas gasoline from another dealer; that under section 11 of the contract, it had a right to pursue the contractual remedy of canceling the contract with appellant.

Both appellant and appellee supported their respective claims with substantial evidence, and there being thus presented conflicting evidence as to the material issues in the case, judgment of the lower court in favor of appellee is an implied finding on the disputed facts in its favor.

■ However, appellant urges that the evidence offered by appellee to establish its alleged agreement of a commission of 1 cent per gallon on "blue" gasoline contradicts the terms of the written contract, and hence cannot be considered by this court in determining the issues on this case. To this contention we can not agree.

Subsections (a), (b), and (c) of section 6 of the contract, in respect to the commissions to be allowed appellant, use as a basis for such commissions the "spread between Company's tank wagon posted price and service station posted price schedules." The undisputed evidence shows that, for a space of several months after January 8, 1932, when appellant received his first consignment of gasoline, until the summer of that year, there was no "tank wagon posted price" on "blue" gasoline. This gave a predicate for the introduction of evidence to identify the grades of gasoline that were made the subject of the written contract. Yellowstone Sheep Co. v. Diamond Dot Live Stock Co., 43 Wyo. 15, 297 P. 1107, 75 A. L. R. 1151, and annotations to said case, page 1166. Again, there being no "tank wagon posted price" on "blue" gasoline, the contract on its face shows that there was an omission in respect to the commission on "blue" gasoline. Where such omission is shown to exist in a contract, resort may be had to parol evidence to prove the omitted provisions of the contract. 22 C. J. 1283 § 1715, page 1290 § 1720.

■ In our opinion, the evidence in this case would support a finding by the trial court in favor of either party, and the court having

found the disputed issues of fact as to the commission on the sales of "blue" gasoline, in favor of appellee, such finding is binding on this court, and the case in respect to this issue must be affirmed.

■ The disputed issue in respect to appellant's commission on "blue" gasoline being decided in favor of appellee, it necessarily follows that appellee was not guilty of a breach of the written contract, by allowing appellant a 1 cent commission on "blue" gasoline; that no ground existed in favor of appellant for the breach of the contract in respect to the purchase and sale of East Texas gasoline, in lieu of appellee's "blue" gasoline, and that, by such purchase, appellant committed a breach of the contract, forbidding him to purchase petroleum products not of appellee's manufacture. Under section 11 of the contract, this purchase of East Texas gasoline gave to appellee a legal right to cancel the contract, and appellee having such right, appellant is not entitled to any damages by reason thereof.

It necessarily follows that, in our opinion, the judgment of the lower court should be affirmed, and it is so ordered.

Affirmed.