James N. LANDRUM, Appellant,

v.

Joe W. DEVENPORT and William Donald Devenport, Individually and d/b/a Devenport Chevrolet, Appellees.

No. 8861.

Court of Civil Appeals of Texas, Texarkana.

April 22, 1981.

Timothy M. Fults, Drew R. Heard, Shank, Irwin, Conant, Williamson & Grevelle, Dallas, for appellant.

Michael F. Pezzulli, Robert L. Kelsoe, Kelsoe & Ayres, Dallas, for appellees.

WILLIAM J. CORNELIUS, Chief Justice.

James N. Landrum brought this action against Joe W. Devenport and William Donald Devenport, d/b/a Devenport Chevrolet, to recover damages for breach of contract and certain alleged violations of the Texas Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Comm.Code Ann. § 17.41 et seq. The case went to trial before a jury, but after Landrum presented his evidence the trial court granted Devenport's motion for instructed verdict and rendered a take nothing judgment.

The question to be decided is whether Landrum produced some probative evidence tending to support each element of his cause of action. If so, he was entitled to go to the jury with his case and an instructed verdict was improper unless some defense was conclusively established by law or by the evidence. In determining the question, we must view the evidence in the light most favorable to the party against whom the verdict was instructed, giving him the benefit of every reasonable inference which may legitimately be drawn from that evidence. Considering the evidence from that perspective, the following facts are found in

the record: the only witness produced by Landrum was his son, Jimmy Landrum, who conducted all dealings with Devenport. The elder Landrum is a collector of automobiles. He is in poor health and seldom leaves his home. His son Jimmy lives with him and helps him maintain his automobile collection. In the Fall of 1977 Landrum became interested in purchasing three Chevrolet Corvettes Z78 Indy Pace Cars. These cars were a limited edition. General Motors made approximately 6,500 of them in 1978. The Devenports conduct business in Wolfe City, Texas, under the name Devenport Chevrolet. On January 25, 1978, Jimmy Landrum contacted Joe Devenport by phone and informed him that he was interested in buying the Indy Pace Car which the Devenports would be receiving from General Motors. On January 26, 1978, Jimmy drove to Wolfe City, talked to Joe Devenport and selected the options he wanted on the car. Jimmy and Devenport then signed a purchase order for the car. The price was left blank. Jimmy testified that Devenport told him that the price would be the car's sticker price which the parties estimated would be between $14,000.00 and $18,000.00. Jimmy said that the reason the price term on the purchase order was not filled in was because he felt it would be rude to require him to write down the window sticker price, since he considered that they had an agreement. Jimmy gave Devenport $100.00 in cash as a deposit on the car and received a receipt. The car arrived in May of 1978 and carried a sticker price of $14,688.21. By the time the car was delivered the demand for the Pace Cars had increased to the point where the market value exceeded the sticker price. Devenport demanded $22,000.00 for the car. The Landrums offered to pay the sticker price which was refused. Jimmy Landrum could find no other Pace Cars in the market. Landrum's attorney sent a letter to Devenport stating that he intended to pursue all of his legal rights and remedies under Texas law if the tender of the sticker price was refused. Devenport's reply was that the price was $22,000.00 and that he had others willing to pay that price. Land-

rum subsequently purchased the car at the $22,000.00 price. Jimmy Landrum testified that the car was purchased "Under protest of the papers", referring to the letter written by his attorney.

The reasons given by the trial court for granting the instructed verdict were that no valid contract had ever been entered into because the price had not been expressed in the contract and there was no showing that Jimmy Landrum was acting as his father's agent; the parties entered into a new contract or a novation for the higher price; Landrum renegotiated the trade at the higher price and thus ratified the transaction or waived or is estopped from claiming a breach or violation; that no deceptive trade practice was committed; and that Landrum suffered no damage. We have concluded that the instructed verdict was improperly granted, and accordingly will reverse the case and remand it for a new trial.

■ The essential elements of a suit for breach of contract are (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) the defendant breached the agreement; and (4) the plaintiff was damaged as a result of the breach.

■ The evidence at least raised a fact issue on the existence of a valid contract. Joe Devenport testified that the agreed price was to be the market value of the car at the time of delivery, but Jimmy Landrum testified that the agreed price was to be the car's sticker price, and the jury could reasonably have found that to be the fact. If both parties agreed on a price, the failure to insert that agreed price in the written contract did not invalidate the agreement under the circumstances present here. Tex. Bus. & Comm.Code Ann. § 2.204. See *Magnolia Warehouse & Storage Co. v. Davis & Blackwell*, 108 Tex. 422, 195 S.W. 184 (1917); *M. C. Winters, Inc. v. Cope*, 498 S.W.2d 484 (Tex.Civ.App.—Texarkana 1973, no writ); *Hardin v. James Talcott Western, Inc.*, 390 S.W.2d 517 (Tex.Civ.App.—Waco 1965, writ ref'd n. r. e.); *Watson v. Magno-*

lia Petroleum Co., 81 S.W.2d 138 (Tex.Civ. App.—Dallas 1935, no writ); 23 Tex.Jur.2d Evidence §§ 385, 386. Neither did the parol evidence or integration rule prohibit proof of the actual price. When a writing appears obviously incomplete, as when it is silent on a point which would normally be expressed, it may be completed by extrinsic proof of the omitted term. *Magnolia Warehouse & Storage Co. v. Davis & Blackwell*, supra; *M. C. Winters, Inc. v. Cope*, supra; *Hardin v. James Talcott Western, Inc.*, supra; *Olan Mills, Inc. v. Prince*, 336 S.W.2d 186 (Tex.Civ.App.—Texarkana 1960, no writ); 2 R. Ray, Evidence § 1632, p. 359, et seq. Even if the price was not agreed upon the agreement may still constitute a valid and binding contract if both parties intended to be bound and there is a reasonably certain basis for giving an appropriate remedy. Tex.Bus. & Comm.Code Ann. § 2.204(c), § 2.305. In such a case the law will imply that a reasonable price was intended. Tex.Bus. & Comm.Code Ann. § 2.305(a)(1); *Bendalin v. Delgado*, 406 S.W.2d 897 (Tex.1966); *Paschal v. Hart*, 105 S.W.2d 337 (Tex.Civ.App.—Waco 1937, no writ); *Burger v. Ray*, 239 S.W. 257 (Tex. Civ.App.—Dallas 1922, writ dism'd); 13 Tex.Jur.2d Contracts § 164, p. 351. The fact that both parties here signed the agreement, which was complete in all respects except specification of the price, is some evidence that they intended to be bound. The question of price then, whether a specific figure or a reasonable price, was a question for the jury upon the evidence.

■ There was also probative evidence that Jimmy Landrum executed the contract as his father's agent. Jimmy so testified and there was also circumstantial evidence confirming the fact. The rule that an agent's declarations or acts are inadmissible to prove agency applies only to out of court declarations. An agent may testify in court to the fact of agency the same as to any other fact within his knowledge. *Cook v. Hamer*, 158 Tex. 164, 309 S.W.2d 54 (1958)

Fact issues were raised on the other essential elements of Landrum's case as well. It was undisputed that Landrum tendered performance on the basis of the price he testified was the agreed price. If that was the agreed price, Devenport's refusal to sell the car to Landrum at that price would constitute a breach of the contract. If there was such a breach, Landrum's damages would be established at the difference between the agreed price and the price he actually paid.

■ The trial court, however, concluded that certain defenses to Landrum's cause of action had been conclusively established. That conclusion was based upon the fact that after Devenport refused to accept the sticker price Landrum paid the higher price of $22,000.00 as demanded by Devenport. But there is evidence that Landrum paid the higher price under protest in order to avoid a loss of the unique product, and that he never intended to acquiesce in Devenport's repudiation of the alleged agreement. He had his attorney write Devenport demanding that the sticker price be accepted and warning that he would pursue all of his rights under the contract if Devenport failed to comply. In addition, he testified that he paid the higher price under protest and without any intention to make a new agreement or waive his rights under the original contract. Intent is an essential element of both novation and waiver. Novation is the voluntary replacement of an old obligation with a new one. It requires that both parties intend for the new arrangement to be substituted for the old one. *Allstate Insurance Company v. Clarke*, 471 S.W.2d 901 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n. r. e.); *Ridgleawood, Inc. v. White*, 380 S.W.2d 766 (Tex. Civ.App.—Waco 1964, no writ). Waiver is the voluntary relinquishment of a known right, and its existence is largely dependent upon the intention of the party possessing the right. *Ford v. Culbertson*, 158 Tex. 124, 308 S.W.2d 855 (1958); 60 Tex.Jur.2d Waiver § 1, p. 182. Intention is usually a question of fact, and in view of Landrum's testimony, his attorney's letter, and the other circumstances surrounding the transaction, neither novation nor waiver was established as a matter of law, but were issues for the jury.

Neither did the evidence establish ratification as a matter of law. The rule we applied in *B & R Development, Inc. v. Rogers*, 561 S.W.2d 639 (Tex.Civ.App.—Texarkana 1978, writ ref'd n. r. e.), does not apply to the situation we have here. It is true that a person who, with full knowledge of a fraud perpetrated on him, voluntarily renegotiates the transaction or renews his obligation will be held to have ratified the fraud. *B & R Development, Inc. v. Rogers*, supra, and cases there cited. But the basis of that rule is not ratification in the strict sense, but simply that fraud has been eliminated from the transaction and there is no longer any deception. *B & R Development, Inc. v. Rogers*, supra. That is not the situation which is revealed here. Here there was a disagreement as to what was the contractual price. If Landrum did not intend to make a new agreement, but only out of necessity in order to avoid a loss of his bargain paid the higher price under protest and while insisting upon his rights, his act would not amount to a ratification or waiver. Intention to ratify or waive cannot be inferred from acts where, under the exigencies of the case, the party had no satisfactory alternative. See: Tex.Bus. & Comm.Code Ann. § 1.201; *Jon-T Farms, Inc. v. Goodpasture, Inc.*, 554 S.W.2d 743 (Tex.Civ.App.—Amarillo 1977, writ ref'd n. r. e.); *Mayhew & Isbell Lumber Co. v. Valley Wells Truck Growers' Ass'n*, 216 S.W. 225 (Tex.Civ.App.—San Antonio 1919, no writ); 13 Tex.Jur.2d Contracts § 330, pp. 594, 595; 17 Am.Jur.2d Contracts § 395, pp. 840, 841. Thus, ratification was a question of fact depending largely upon Landrum's intention and the surrounding circumstances of the transaction.

Estoppel was not established conclusively. Estoppel arises when a representation or act by one party causes the other to do an act which would operate to his detriment if the first party is allowed to complain, or where a party recognizes the validity of a transaction and accepts benefits from it and then attempts to repudiate it. 22 Tex.Jur.2d Estoppel § 1, p. 660; § 11, pp. 674–676. See also *Empire Gas & Fuel Co. v. Albright*, 126 Tex. 485, 87 S.W.2d 1092 (1935). Neither situation is conclusively established by the facts here.

For largely the same reasons as are stated hereinbefore, it appears that Landrum also raised issues of fact on his alleged cause of action under the Texas Deceptive Trade Practices-Consumer Protection Act.

For all the reasons stated, the judgment of the trial court is reversed and this cause is remanded for a new trial.