James A. **EGGERS**, et al., Appellants,

v.

Glen A. **HINCKLEY**, Trustee, Appellee.

No. 05–82–01230–CV.

Court of Appeals of Texas,
Dallas.

Oct. 24, 1984.

Rehearing Denied Dec. 28, 1984.

Robert W. Kantner, Jenkens & Gilchrist, Dallas, for appellants.

W. Mike Baggett, Winstead, McGuire, Sechrest & Minick, Dallas, for appellee.

Before the court en banc.

SPARLING, Justice.

James A. Eggers and seventeen other members of the "Frisco Joint Venture" appeal a judgment for damages resulting from a defaulted promissory note executed to Hinckley and signed by "Sam Wright, Trustee," a member of the venture. In twenty-four points of error, appellants, the venturers, challenge (1) the legal and factual sufficiency of the evidence to support several of the special issues; (2) the combination of types of authority in one issue; (3) the judge's refusal to submit requested explanatory instructions; (4) the judge's refusal to submit a requested issue; (5) the submission of an allegedly duplicitous issue; (6) the submission of an issue that did not allocate the burden of proof; and (7) the judge's denial of appellant's motion for instructed verdict. Appellee Hinckley asserts, by crosspoint, that the judge erroneously refused to award prejudgment interest. We overrule the venturers' points of error, sustain Hinckley's crosspoint of error, modify the judgment, and affirm.

Hinckley's suit alleged that the venturers had defaulted in payment of a promissory note and were personally liable for accrued but unpaid interest and taxes. Sam Wright, a member of the joint venture, executed closing instruments—a note and deed of trust—that purported to impose personal liability for interest and taxes. The venturers claim that Sam Wright, acting for Sam Wright and Associates, Realtors, Inc. (the managing venturer), lacked authority to impose personal liability. The court entered an agreed judgment against Wright and severed the claim against Wright from the claim against the other venturers. The jury found that the venturers authorized Wright to assume liability in their behalf, and the court entered judgment against the venturers on the jury verdict.

### Actual, Apparent, Implied Authority

The venturers argue that there was no evidence or insufficient evidence to support the jury's finding, in answer to Special Issue No. 1, that the venturers gave Wright actual, apparent, or implied authority to sign closing instruments imposing personal liability.[1]

■ We need not decide this issue because we hold as a matter of law that the venturers authorized Wright to impose personal liability. The rules for interpretation of contracts apply to the interpretation of agency authority. Restatement (Second) of Agency § 32 (1958). No ambiguity was pleaded by either party, and no issue concerning the parties' intentions in signing the joint venture agreement was requested or submitted to the jury. We hold that the agreement is not ambiguous, and, accordingly, its interpretation and legal effect are questions of law to be determined by the court. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518–19 (Tex.1980). Thus, the jury's answer to Special Issue No. 1, inquiring whether Wright had actual, apparent, or implied authority to bind the venturers to documents imposing personal liability, is not controlling.

---

1. We note with interest that the dissent would hold that the nature of the relationship was one of trust rather than agency or joint venture. This "trust" theory, which absolves the venturers of liability, was never pleaded, was not an issue in trial, was not the subject of a request for special issues, was not briefed on appeal, nor argued during submission. Perhaps the litigants are also aware of *Spiritas v. Rabinowitz,* 544 S.W.2d 710 (Tex.Civ.App.—Dallas, 1976, writ ref'd n.r.e.), which declares that the nomenclature "trustee" does not create a trust. Therefore, we do not agree with the dissent's statement that Hinckley "seeks to impute liability upon the theory that Wright was not a *trustee,* whose *cestuis que trust* could not be held liable...." In fact, Hinckley never argued that Wright was not a trustee because the issue never arose. Accordingly, we may not decide this appeal on the theory that a trust relationship was created. *See Davis v. Campbell,* 572 S.W.2d 660 (Tex.1978) (parties are restricted on appeal to theory on which case was tried); *El Paso Environmental Systems, Inc. v. Filtronics, Inc.,* 609 S.W.2d 810, 813 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.) (appeals court should not decide case on theory different from that on which it was pleaded and tried).

■ One express purpose of the joint venture agreement was to acquire property described in a contract of sale imposing personal liability (paragraph 2.1), and the agreement provided that "the Venturers herewith authorize the Managing Venturer to act alone in their place and stead in carrying out the terms of the Contract of Sale agreements for the aforementioned property" (paragraph 5.3). The agreement authorized the Managing Venturer to bind the Joint Venture on his signature and to "perform all ministerial acts and to execute any and all documents ... necessary or expedient to carry out and effectuate the purpose of the parties as expressed in this agreement" (paragraph 5.1). The agreement further provided that "nothing shall give the Managing Venturer power to make a Venturer personally liable unless the Venturer signs, except in the case of closing the initial transaction as is set out herein" (paragraph 5.1). The venturers further agreed that the "unanimous consent of all Venturers shall be required to ... create any personal liability for the individual Venturers other than that personal liability to which the individual Venturers may have agreed in writing" (paragraph 5.2).

Read as a whole, the agreement clearly contemplates imposition of personal liability in the initial purchase transaction, the purchase of the venture property. It expressly authorizes the managing venturer to execute on behalf of the venturers a note and deed of trust in compliance with a contract of sale which provides for personal liability for interest and taxes. Accordingly, we find no conflicts or ambiguities and hold, as a matter of law, that the venturers, through their agreement, expressly authorized Wright to impose personal liability.

The dissent mistakenly questions Wright's authority in August to bind participants in a joint venture formed in November. A contract of sale of the property was signed in August, but the closing instruments were executed in November. It was the closing instruments that bound the venturers to interest and taxes.

Although not presented as an issue on appeal, we note that both the Joint Venture Agreement and the closing instruments were signed on November 28, 1972. It cannot be determined in what order the instruments were executed. We hold, however, that this chronology is not germane to the disposition of this appeal because each of the venturers had previously read and approved the agreement in its final form.

In view of our holding that the evidence was sufficient to sustain a finding of actual authority, we need not consider the venturers' third point of error, whether the judge erred by combining actual, apparent, and implied authority in one special issue; nor the venturers' fourth point of error, whether the court erred by refusing its requested definition of apparent authority; nor points of error five, six, seven, and eight, addressing Special Issue No. 2, inquiring into the closing of the initial transaction; nor points twelve, thirteen, and fourteen, which challenge the legal and factual sufficiency of the evidence to support the jury's finding that the venturers ratified the agreement and the definition of "ratification." Accordingly, we overrule points of error one, two, three, four, nine, twelve, thirteen, and fourteen.

### Evidence of Accrued Interest and Taxes

■ The venturers argue the absence or insufficiency of evidence to establish the amount of accrued interest and taxes because Hinckley signed an affidavit that conflicted with his testimony. Hinckley explained the inconsistency at trial, and his testimony was sufficient to present an issue of fact for the jury's determination. The venturers additionally complain that the figures were calculated imprecisely, but they did not challenge the calculations or introduce contradictory evidence. Accordingly, we overrule points of error fifteen, sixteen, seventeen, and eighteen.

### Subsequent Alteration of the Closing Instruments

■ The venturers argue that the evidence established as a matter of law that

Hinckley altered the closing instruments after Wright signed them or, alternatively, that the jury's finding of no alteration was against the great weight and preponderance of the evidence. We disagree. Wright testified that the closing instruments, at the time of execution, did not impose personal liability. Hinckley testified that he neither altered the documents nor was aware of any alteration, and he further demonstrated that alteration technically was impossible. We hold that there was sufficient evidence to create a factual dispute for the jury to resolve.

■ The venturers also claim that the judge erred by refusing to submit a special issue to determine whether Wright knew that the closing instruments imposed personal liability. They argue that Wright's knowledge was relevant to the issues of alteration, apparent authority, and ratification. We disagree. The question of Wright's knowledge is not an issue "controlling the disposition of the case," TEX. R.CIV.P. 277, but merely evidentiary. *See also* TEX.R.CIV.P. 279 ("When the court submits a case upon special issues, he shall submit the controlling issues.... Where the court has fairly submitted the controlling issues ... the case shall not be reversed because of the failure to submit other and various phases or different shades of the same issue"). We overrule points of error ten and eleven.

### The Judgment Against Wright

The venturers urge that because Hinckley obtained a judgment against Wright, individually, the suit against the other venturers was barred by the doctrines of election of remedies, waiver, and estoppel. We do not agree.

■ The venturers first contend that Hinckley chose between two inconsistent but coextensive remedies, thereby electing his remedy. We hold that the remedies were not inconsistent. Wright and the investors were, as a matter of law, jointly and severally liable for all obligations. *Misco-United Supply, Inc. v. Petroleum Corp.*, 462 F.2d 75, 77–78 (5th Cir.1972); *Thompson v. Schmitt*, 115 Tex. 53, 274 S.W. 554, 560 (1925); *Cherokee Village v. Henderson*, 538 S.W.2d 169, 173 (Tex.Civ. App.—Houston [1st Dist.] 1976, writ dism'd).[2] Accordingly, we hold that the doctrine of election of remedies is inapplicable to the instant case. *See Lubbock Feed Lots, Inc. v. Iowa Beef Processors*, 630 F.2d 250, 275, n. 35 (5th Cir.1980).

■ The venturers next argue that the jury's finding that Hinckley did not waive his cause of action against the venturers was against the great weight and preponderance of the evidence or that waiver was established as a matter of law. We disagree. Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with the claim of a right. *Ford v. Culbertson*, 158 Tex. 124, 308 S.W.2d 855, 865 (1958); *Shook v. Republic National Bank of Dallas*, 627 S.W.2d 741, 749 (Tex.App.—Tyler 1981), *rev'd on other grounds*, 653 S.W.2d 278 (Tex.1983). Although waiver may be implied, the mere act of taking a judgment against one principal is not, as a matter of law, inconsistent with seeking judgment against other jointly and severally liable principals. Thus, whether Hinckley knowingly and intentionally relinquished a legal right was a question of fact for the jury's determination. *Landrum v. Devenport*, 616 S.W.2d 359, 362 (Tex.Civ.App.—Texarkana 1981, no writ).

■ Finally, we do not agree that the venturers established estoppel as a matter of law or that the jury's finding that Hinckley was not estopped was against the great weight and preponderance of the evidence. A party to a judicial proceeding is estopped to take a position in conflict with a stance in a prior judicial proceeding if the position

---

**2.** Consequently, we disagree with the venturers' contention that their individual liabilities should be limited to their pro rata portion of the debt. The joint venture agreement apportions the liabilities among the venturers vis-a-vis one another but is ineffective to limit each venturer's joint and several liability to a third party.

prejudices the adverse party and the parties and issues are the same. *Smith v. Chipley*, 118 Tex. 415, 16 S.W.2d 269, 276 (1929). The parties herein are different, and, as noted, obtaining a judgment against Wright was not inconsistent with suing the other investors. Accordingly, we overrule grounds of error nineteen through twenty-four, inclusive.

#### Prejudgment Interest

 By cross-point, Hinckley contends that the court erred by refusing to award prejudgment interest. We agree. "Prejudgment interest is recoverable as a matter of right when an ascertainable sum of money is determined to have been due and payable at a definite date prior to judgment." *Miner-Dederick Construction Corp. v. Mid-County Rental Service, Inc.*, 603 S.W.2d 193, 200 (Tex.1980). Conditions governing the measure of damages existed on February 3, 1976, the date the joint venture property was foreclosed. Accordingly, we modify the judgment to delete the paragraph ordering that prejudgment interest be denied and to add the following paragraph:

> IT IS FURTHER ORDERED that the judgment hereby rendered bear interest at the rate of six percent (6%) per annum from March 4, 1976, to July 23, 1982.

*See* TEX.REV.CIV.STAT.ANN. art. 5069–1.03 (Vernon Supp.1984).[3] Accordingly, we overrule all other points of error and affirm the judgment, as modified.

GUITTARD, C.J., and AKIN, SHUMPERT, STEPHENS, STEWART, STOREY and ROWE, JJ., join in the majority opinion.

CARVER, J., dissents.

ALLEN, VANCE and WHITHAM, JJ., join in the dissenting opinion.

GUILLOT, J., not participating.

---

**3.** "When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable."

CARVER, Justice, dissenting.

I am unable to agree with the majority opinion because the record fails to show that Sam Wright, Trustee, was an agent of principals to whom his liability could be imputed.

James A. Eggers, along with 17 other members of the "Frisco Joint Venture," appeal from a judgment imposing upon them unpaid interest and unpaid taxes which were, admittedly, the primary obligation of "Sam Wright, Trustee" arising from his contract and his subsequently executed limited liability note and deed of trust securing his purchase of land on credit. The principal facts are not in dispute. Hinckley, Trustee, as Seller, and Wright, Trustee, as Purchaser, entered into a contract on August 31, 1972, covering 120 acres priced at $651,423.60, payable $97,713.60 at closing and the balance in a limited liability note for $553,710.00, secured by a deed of trust. The purchaser's personal liability on the note was limited to unpaid interest accrued and unpaid taxes accrued to the date of any foreclosure. The contract was closed on November 28, 1972, upon the terms set out in the contract with a deed into "Sam Wright, Trustee" and the note and deed of trust executed by "Sam Wright, Trustee." Subsequently, the note's terms were breached, the deed of trust foreclosed, and suit was brought for accrued and unpaid interest and for accrued and unpaid taxes, together with attorney's fees. The suit was brought against "Sam Wright, Trustee" as the party executing the note and also against the 18 members of the "Frisco Joint Venture" on the theory that Wright was the "agent" of the venturers with actual authority to bind them to the limited obligation of the note and deed of trust given to Hinckley, Trustee. Wright did not defend the suit, his case was severed, he agreed on a judgment for $38,680.05, and actually paid $21,500.00 thereon. The remaining defendants sought, and were granted, summary judg-

ment, but this judgment was reversed on appeal. *Hinckley v. Eggers,* 587 S.W.2d 448 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.).

Upon trial to a jury, the verdict found: (1) that Sam Wright had actual, apparent, or implied authority to act for the defendants when he signed the note and deed of trust; (2) that the note and deed of trust were part of the "initial closing" in which the Frisco Joint Venture purchased the property from Hinckley; (3) that the defendants ratified the action of Wright; (4) that the accrued interest was $41,444.18; (5) that the accrued taxes were $10,646.02; (6) that reasonable attorney's fees to try Hinckley's suit were $17,000.00; (7) that the note and deed of trust were not altered after Wright signed them; (8) that Hinckley did not waive his claim against these defendants by taking a judgment against Wright; and (9) that Hinckley was not estopped, by his judgment against Wright, from pursuing his claim against these defendants. Upon this verdict, and the admitted collection from Wright, the trial court entered judgment in favor of Hinckley, Trustee, for the balance of the undischarged interest and taxes; interest after judgment; and the attorney's fees found by the jury.

The appealing parties primarily urge the absence, or insufficiency, of evidence to support the imputation of the liability of the maker of the note to them. I would agree. The holder of the note signed "Sam Wright, Trustee" seeks to impute liability upon the theory that Wright was not a *trustee,* whose *cestuis que trust* could not be held liable, but an *agent* whose *principals* were liable; however, I conclude that the proof fails to achieve the conversion from "Trustee" to "Agent."

While the contract to purchase, the deed, the vendor's lien note, and the deed of trust were all in the name of "Sam Wright, Trustee," the "designation of a party as a 'trustee' does not in itself create a trust," as was held in *Spiritas v. Robinowitz,* 544 S.W.2d 710 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.). Moreover, in the absence of the existence of a trust, of which Sam Wright was in fact the trustee, "the use of 'Trustee' in the deed is merely a description and without legal effect. It is as if title were in Robinowitz [Sam Wright in our case] *individually.*" 544 S.W.2d at 715; *Costello v. Hillcrest State Bank,* 380 S.W.2d 780, 782 (Tex.Civ.App.—Dallas 1964, no writ). However, if a trust in fact existed, Hinckley, Trustee, was put on notice thereof and took his note subject to the trust. *Studebaker Brothers Manufacturing Co. v. Hunt,* 38 S.W. 1134 (Tex.Civ. App.1896, writ ref'd).

The majority erroneously holds that Sam Wright was neither a "trustee" nor an "individual," but an "agent" with actual authority of seventeen principals, evidenced by a writing signed by the alleged principals three months after Sam Wright, Trustee, contracted to buy the property and give the note. It is an established principle that a contract to acquire land vests equitable title in the vendee with the vesting of legal title conditioned only upon the vendee's tender of the consideration contracted. *Leeson v. City of Houston,* 243 S.W. 485, 488 (Tex.Comm'n App.1922, judgmt adopted); *City of Garland v. Wentzel,* 294 S.W.2d 145 (Tex.Civ.App.— Dallas 1956, writ ref'd n.r.e.). The record reflects that on August 31, 1978, the date the sales contract was executed, there were none of the subsequently alleged principals of Sam Wright yet known or yet recruited, and that Wright informed Hinckley of this fact. The sales contract of August 31, 1978 signed by Wright imposed upon him the very liability sought to be enforced in this suit. The liability was his and his alone when undertaken because he had no "principals" then existing. I would hold that ex post facto "principals," if any, are not liable for acts or contracts of the "agent" antedating the principal and agent relationship.

But, the majority says, on the same day Wright received the deed under his contract, November 28, 1972, seventeen venturers signed an agreement naming Wright their "managing venturer" and giving him

authority to accomplish the acquisition for them of the very same property. In this fashion, the majority says, what had been Wright's individual, or trustee's, liability became the venture's liability. However, this reasoning fails because the opening premise is false, under our record. The venturers' November 28 agreement does not appoint Wright as managing venturer but appoints to this office, and gives "agency" authority to, a *corporation*. The venturers agreement paragraph 5.1 provides (in part):

> *Management.* It is agreed that the power to perform general ministerial acts relating to the daily business affairs of the Joint Venture, unless expressly provided to the contrary, shall be in the *Managing Venturer*, to-wit: *Sam Wright and Associates, Realtors, Inc.;*

The only appointment of Sam Wright by the venturers is set out in the same instrument paragraph 5.5 stating:

> *Trustee.* Sam Wright of the Managing Venturer, Sam Wright and Associates, Realtors, Inc., is hereby appointed Trustee to act for this Joint Venture. In the event Sam Wright, Trustee fails or refuses to act, has been removed as provided herein, is incapacitated, or is deceased, fifty-one percent (51%) of the Venturers in interest, not in numbers, can appoint a substitute Trustee. Said substitute Trustee to have all powers that Sam Wright, Trustee, had under this agreement.

Since Wright was *not* made the venturers' "managing venturer," or "agent," by the venturers' agreement; the majority opinion on this ground is untenable, and I would hold to the contrary.

While the majority opinion does not rest upon "implied" or "apparent" authority to sustain the judgment below, I note the jury's verdict as well as Hinckley's arguments seeking to sustain the judgment on these grounds. I find no evidence in the record that Sam Wright had *any* authority in August, from those who were to become venturers in November, from which authority could be "implied" to bind these ventur-

ers to a liability which was Wright's by his August contract. Further, I find no evidence in the record of any act in August, by those who were to become venturers in November, which act could be said to have clothed Sam Wright with "apparent" authority to bind anyone else to the personal liability Sam Wright undertook in his August contract. There being no evidence in the record to support the jury's finding on these issues, the trial court's judgment, insofar as it may have rested on these issues, was in error, and I would so find.

Further, while the majority opinion does not rest upon ratification, I note the jury's finding of ratification and Hinckley's argument that the trial court's judgment should be sustained on this ground. The record reflects that, some weeks after the execution of the venturers' agreement on November 28, 1972, Sam Wright, Trustee, mailed copies of his contract, deed, note, and deed of trust to the other members of the Frisco Joint Venture. No replies were received, and Hinckley urged that the venturers' silence ratified the acquisition by Frisco Joint Venture upon the authority of the managing venturer and the imposition of personal liability upon the venturers as a reasonable necessary term and consistent with paragraph 5.1 (above quoted) of the venturers' agreement. However, Frisco Joint Venture never acquired any property by their managing venturer or otherwise. The documents mailed do not purport to show any act by the corporation named managing venturer; consequently, neither ratification nor repudiation was called for under the circumstances. The documents mailed did reflect acts of a Trustee, from August through November, and the same Trustee named by the venturers in November; however, notice to a beneficiary of an act of his Trustee does not call for either ratification or repudiation because, in no event, is a beneficiary liable for the acts of his Trustee. *McCamey v. Hollister Oil Co.,* 241 S.W. 689 (Tex.Civ.App.—Fort Worth 1922), *aff'd,* 115 Tex. 49, 274 S.W. 562 (1925). To the extent that the trial court's judgment rests upon the jury's find-

ing of ratification, I would find the judgment to be in error.

I would reverse the trial court's judgment and render judgment that Hinckley take nothing.