KYLE COOK ET AL V. DALTON HAMER ET AL

No. A-6434. Decided January 8, 1958.
Rehearing overruled February 12, 1958.
(309 S.W. 2d Series 54)

*Moses & Truett,* of McKinney, and *C. C. Renfro,* of Dallas, for petitioners.

On the issues of the intention of the parties and the sufficiency of the evidence. Bingham v. Kimbrell, 285 S.W. 2d 312; Hagood v. Hagood, 186 S.W. 220; McConnon v. McCormick, 179 S.W. 275; Latham v. Pledger, 11 Texas 439; Henry v. Phillips, 105 Texas 459, 151 S.W. 533; Robertson v. Melton, 131 Texas 325, 115 S.W. 2d 624 and American National Life Ins. Co. v. Warnock, 131 Texas 457, 114 S.W. 2d 1161.

*James W. Batchelor,* of Durant, Okla., *Johannes & Kelsoe,* and *G. H. Kelsoe, Jr.,* all of Dallas, for respondents.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

By her will executed in June, 1942, Josephine Cook left all of her property to her three brothers and the children of her deceased sister. To her brother Henry Cook she devised a tract of 40 acres of land; to her brother J. W. Cook she devised two tracts totaling 53½ acres; to her brother Wesley Cook she devised a 40-acre tract; and to the children of her deceased sister, Delilia Hamer, she devised a 40-acre tract plus her personal property. The will provided that if any of her brothers predeceased her leaving a child or children, they should take the property devised to their father. Subsequent to the making of her will the testatrix became *non compos mentis,* and the county court declared her incompetent and appointed a guardian of her person and estate. During the course of the guardianship the guardian expended all of the personal property of testatrix for her support and maintenance. The court then authorized the guardian to borrow $4,000.00 and later $3,000.00 to be used for that purpose, and to execute a lien against the entire estate as security therefor. When those funds were about to become exhausted the court, upon the application of the guardian, ordered all of the real estate belonging to the testatrix to be sold in order to use the proceeds of the sale for her support and maintenance. Prior to the death of the testatrix all of the property had been sold except the 40-acre tract devised to Henry Cook, and at her death there remained unexpended $14,000.00 of the

proceeds of the sale of the other tracts. The testatrix survived all of her brothers. Each brother left a child or children, so that at her death she was survived by nineteen nieces and nephews.

This suit was brought by fourteen of those nieces and nephews; the Hamer children, the children of J. W. Cook, and the child of Wesley Cook; against the five children of Henry Cook. The relief sought, stated in general terms, was for a four-way division of the 40-acre tract devised to Henry Cook. That relief was granted by the trial court, and judgment was rendered vesting title to three-fourths of the land in the plaintiffs and ordering the cash on hand to be divided into four equal parts and distributed among the four sets of heirs. That judgment was affirmed by the Court of Civil Appeals. 302 S.W. 2d 680.

Under our view of the record only one ground upon which the judgment rests need be considered. Our conclusion with respect thereto makes it unnecessary for us to consider other questions presented in the application for writ of error, since they become immaterial under our rulings.

The ground upon which we rest our decision is that there is evidence in the record that the nieces and nephews, sole heirs of testatrix, agreed that they would waive the provisions of the will and permit the property remaining at the death of testatrix to pass under the law of descent and distribution. Such agreements are valid. Wade v. Wade, 140 Texas 339, 167 S.W. 2d 1008. There were three occasions on which the jury found that an agreement to waive the provisions of the will and divide the property four ways was made. The first was in February, 1953, just prior to the entering of the order of sale by the probate court; the second was in July, 1954, at the reading of the will shortly after the testatrix's death; and the third in October, 1954, when an attempt was made to obtain the signatures to the instrument embodying the terms of the alleged agreement. We question whether there was any evidence that each and all of the nieces and nephews were represented in the February meeting or the October meeting, but have concluded that there is some evidence supporting the jury's finding with respect to the July meeting, and our opinion will deal only with questions presented regarding that meeting. Special issues Nos. 11 and 12 and the answers of the jury thereto read as follows:

"SPECIAL ISSUE NO. 11.  Do you find from a preponderance of the evidence that Marlin Cook or Kyle Cook appeared at the meeting on or about July 20, 1954, in Roland Boyd's

office in Collin County, Texas, as the authorized representative of their sisters, Romaine Abbott, Gracie Abbott and Jewel Lewis? Answer yes or no. Answer yes.

"If you have answered the foregoing special issue 'Yes' then you will answer Special Issue No. 12 below; otherwise you need not answer the same.

"SPECIAL ISSUE NO. 12. Do you find from a preponderance of the evidence that the plaintiffs and defendants or their authorized representatives, made an oral agreement on or about July 20, 1954, to waive the provisions of the will and divide the entire estate into four equal parts? Answer yes or no. Answer yes."

■ While the opinion of the Court of Civil Appeals and the application for writ of error both use the expression "sufficiency of the evidence" to support those answers, it is clear that each intended the expression to mean that there was no evidence of probative force warranting the submission of those issues to the jury. Objection was made in the trial court to the submission of those issues, and the points of error are intended to challenge the ruling on that objection. That is a question of law of which we have jurisdiction.

When the application for writ of error was considered, we were tentatively of the opinion that the answers to the issues above quoted were based in part upon hearsay evidence, and for that reason we granted the writ. At the same time we called upon the attorneys to brief this larger and more interesting question: "Is there any authority for requiring devisees of property remaining on hand to share the same with devisees of specific property which has been sold and the proceeds expended for the care of the testatrix under orders of the probate court?" That question was briefed, and is a most interesting one, but, having decided upon more mature consideration of the record since the case was submitted that there is some evidence supporting the answers of the jury to the above-quoted issues, we do not reach that broader question.

■ The July meeting was attended by members or their authorized representatives of the Hamer family, the J. W. Cook family, and the Wesley Cook family. Kyle Cook and Marlin Cook, sons of Henry Cook, were present, but their three sisters, Gracie Abbott, Romaine Abbott, and Jewel Lewis were not present. All present, including Kyle and Marlin Cook, entered into the agree-

ment. The sole question is whether either Kyle Cook or Marlin Cook was the authorized representative of his sisters. There is testimony in the record that Gracie Abbott and Romaine Abbott stated to a witness just prior to the July meeting that they would not be present at the meeting, but that whatever Kyle and Marlin said would be all right with them. Petitioners objected to the admission of those statements on the ground that they were hearsay. The trial court properly overruled the objection. Those statements were clearly admissible against the parties making them. They are generally treated as exceptions to the hearsay rule. McCormick and Ray, Texas Law of Evidence, Second Edition, Section 1121 et seq. That is competent evidence that those two sisters authorized their brothers to represent them at the meeting. It thus appears that eighteen of the nineteen parties concurred in the agreement.

■ The narrow question, then, for decision is whether there is any evidence that the other party, Jewel Lewis, authorized her brothers, or either of them, to represent her at that meeting.

There is evidence in the record that Kyle Cook made statement at the meeting that he could speak for his sisters who were not present. It is strongly urged that that testimony was inadmissible under the rule that agency cannot be proved by the declarations of the assumed agent. It is a well-established rule that ordinarily such declarations are inadmissible, but they may be admitted in corroboration of other evidence of agency. McAfee v. Travis Gas Corp., 137 Texas 314, 153 S.W .2d 442; 2 Texas Jur., Agency Sections 126, 127. Also the rule that admissions of agency by an assumed agent are not generally admissible against the principal has no application to testimony given by the agent in court. He may testify to facts concerning his authority the same as to any other facts. Gibson v. Gillette Motor Transport, 138 S.W. 2d 293, er. ref.; Pacific Finance Corp. v. Moody, 272 S.W. 2d 403; 3 C.J.S., Agency, Section 322b; 2 Texas Jur. Agency, Section 137, p. 538.

Kyle Cook testified as follows: "Q. Now you had talked to your sisters before you went into this meeting? A. Yes, sir, I discussed it with them. Q. And they agreed to divide the property four ways? A. They said that anything that was fair and agreeable they would do. Q. And you went there with that understanding as their representative, didn't you? A. Not exactly, no sir. Q. Everybody there at that meeting agreed on a four way division didn't they? A. Well I think so."

■ From that evidence the jury could well infer that Kyle Cook was authorized to represent his sisters, including Jewel Lewis. He testified that he discussed the matter with his sisters before attending the conference. There was evidence that two of his sisters stated in advance of the conference that they could not be present, but whatever their brothers said would be all right with them. It is significant that Kyle Cook did not testify positively that he was not speaking for all his sisters. His testimony was that he did "not exactly" appear for them. He further testified that he agreed at the conference to a four-way division, and that prior thereto his sisters had told him that they would do anything that was "fair and agreeable." The meaning of "fair and agreeable" as used by the sisters cannot be said to be clear, but it is susceptible of the construction that, knowing that their brother Kyle was to attend a meeting for the purpose of deciding what should be done with the estate of testatrix, they intrusted the matter to him and would abide by any fair agreement that was agreeable to the other parties.

The witness Truman Cook, one of the children of J. W. Cook, was present at the July meeting. He testified that just after the October meeting he had a conversation with Jewel Cook Lewis and her husband, J. Hoyt Lewis, concerning that meeting. It appears that for some reason the meeting broke up without signatures to the instrument which had been prepared evidencing the agreement reached at the July meeting. We quote from his testimony as follows: "Q. Tell the court what was said and done at that time. A. Well I asked him * * *. Q. Who is him? A. Hoyt * * * Hoyt Lewis. Q. You asked him what? A. Why they didn't sign it, and he said they went to McKinney, like they agreed to, and would have signed it, but said there was a disagreement and some of them left and he and Jewell left too. Q. Did he say anything else at that time? A. He said it was agreeable with him and always had been. Q. What did his wife say? A. She said it was OK. Q. Did they say anything about Kyle or Marlin being authorized to act for them. * * *? A. Well he said they went up there to sign it, just like they promised. Q. Well my question was about the authorization. A. Well they said Kyle notified them and he was spokesman for their family and they went."

■ That is evidence that the parties thought that the agreement made in July was fair, and further they regarded Kyle Cook as the spokesman for the family. Considering the evidence as a whole, we cannot say, as a matter of law, that it did not authorize the jury to draw the inference that Mrs. Jewel Lewis con-

sented for her brother Kyle to represent her at the meeting. We hold that it constituted some evidence of that fact.

Petitioners argue that the oral agreement, if established, was a contract to convey land in violation of the Statute of Frauds, Article 3995, Revised Statutes, 1925. It is a sufficient answer to this contention to state that the Statute of Frauds was not properly raised as a defense in the case. Rule 94, Texas Rules of Civil Procedure; Edwards v. Strong, 147 Texas 155, 213 S.W. 2d 979.

As indicated above, the other questions presented by petitioners, in the light of our holding on the questions above discussed, become immaterial.

The Judgment of the Court of Civil Appeals is affirmed.

Opinion delivered January 8, 1958.

Rehearing overruled February 12, 1958.