The STATE of Texas, Petitioner,

v.

Nicholas BACHYNSKY, M.D. et al., Respondents.

No. C–7524.

Supreme Court of Texas.

May 3, 1989.

Jim Mattox, Atty. Gen., Austin, Stephen Gardner, Asst. Atty. Gen., Dallas, for petitioner.

Thomas R. Newman, Lesher, Newman & Lockhart, Texarkana, for respondents.

COOK, Justice.

The State of Texas brings this action against Dr. Nicholas Bachynsky and the

Physicians' Clinic of Dallas, Inc. ("the Clinic") seeking civil penalties for violations of a permanent injunction issued under the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA), Tex.Bus. & Comm.Code Ann. §§ 17.41–.63 (Vernon 1987). After finding 106 violations of the permanent injunction, the district court assessed the maximum civil penalty of $50,-000 authorized by the DTPA against both Bachynsky and the Clinic. The court of appeals reversed and rendered judgment in favor of Bachynsky and remanded for further proceedings against the Clinic. 747 S.W.2d 847. We affirm in part, reverse in part, and remand the cause to the district court for further proceedings.

The State originally sought civil penalties and injunctive relief against Bachynsky, the Clinic, and four associated clinics for their alleged violations of the DTPA and the Texas Food, Drug, and Cosmetic Act, Tex.Rev.Civ.Stat.Ann. art. 4476–5 (Vernon Supp.1989). According to the allegations of the State, Bachynsky and the clinics had represented the drug Dinitrophenol ("DNP") as being safe for use in weight-loss programs, despite the fact that DNP was a toxic herbicide and had not been approved by the United States Food and Drug Administration. Based on the findings of the jury, the district court rendered judgment assessing civil penalties against Bachynsky and the clinics and enjoined them from several acts and practices, including:

  5. Advertising for or otherwise soliciting patients with the intent or promise of prescribing, dispensing or otherwise distributing DNP to patients.

  6. Representing that DNP is a safe drug for use in a weight-loss program.

  7. Failing to advise patients or prospective patients that DNP is not generally recognized as safe in the treatment of obesity, that it is a highly toxic substance, that it is not approved by the Food and Drug Administration, and that it is a herbicide.

The district court issued this permanent injunction on April 10, 1986.[1]

On May 7, 1986, an investigator with the Texas Attorney General's office called the Clinic in order to determine whether the Clinic was complying with the terms of the injunction. While posing as a prospective patient, the investigator spoke with Geri Levine, a telemarketer for the Clinic, and inquired about medications used in weight-loss programs. In light of the statements made by Levine during the course of this telephone conversation, the Attorney General filed the present action in the name of the State against Bachynsky and the Clinic and sought civil penalties for the alleged violations of the permanent injunction.

Having retained jurisdiction of the case pursuant to section 17.47(e) of the DTPA, the district court that originally issued the injunction conducted a nonjury trial to address the alleged violations of its injunctive order. Based on the evidence presented at trial, the district court found a total of 106 violations of the permanent injunction and assessed $50,000 in civil penalties against both Bachynsky and the Clinic. On appeal, Bachynsky and the Clinic contest the fact findings pertaining to the violations of the permanent injunction and the individual liability of Bachynsky for any violations.

■ The district court found that Bachynsky and the Clinic violated paragraph five of the injunction on fifty separate occasions "when Levine solicited patients with the intent of prescribing, dispensing or otherwise distributing DNP to patients in the future." The district court further found six violations of paragraph six, which prohibited Bachynsky and the Clinic from representing DNP as being a safe drug for

---

1. Bachynsky and the clinics contested the validity of the district court's judgment and injunction in a separate proceeding before the court of appeals. *See Bachynsky v. State*, 747 S.W.2d 868 (Tex.App.—Dallas 1988, writ denied). Although the court of appeals reversed and remanded that case for further proceedings, its disposition does not affect the present inquiry into the alleged violations of the injunction committed by Bachynsky and the Clinic. We thus agree with the court of appeals' holding that Bachynsky and the Clinic were obligated to obey the permanent injunction prior to its modification or reversal on appeal. *See Maness v. Meyers*, 419 U.S. 449, 458–59, 95 S.Ct. 584, 590–91, 42 L.Ed.2d 574 (1975).

use in weight-loss programs. Bachynsky and the Clinic contend that the evidence was legally insufficient to support these findings of the district court.[2] In reviewing the legal sufficiency of the evidence, we consider only the evidence and inferences supporting these findings and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

As indicated by her testimony at trial, Levine received telephone calls from more than one person, and possibly up to six persons, who inquired about DNP within the month following the issuance of the permanent injunction. During the course of these conversations, Levine was occasionally "put in the position to have to defend [DNP]." Levine stated that her defensive comments regarding DNP were partially motivated by the fact that the drug might be used again in the future. Additionally, Levine informed these persons that DNP was safe in her opinion. When viewed in a light most favorable to the findings, Levine's testimony provides some evidence to support six violations of paragraph five and six violations of paragraph six.

The record, however, does not contain any evidence to support the findings of the remaining forty-four violations of paragraph five. Levine testified that fifty or sixty persons called following the issuance of the injunction and expressed their continued support for DNP. Although Levine did not disclose the undesirable nature of DNP to these callers, her testimony falls short of providing any evidence that Levine violated paragraph five by soliciting these callers with the intent of dispensing DNP. We thus affirm the court of appeals' judgment only to the extent there is no evidence

to support forty-four of the fifty violations of paragraph five.

The district court further found fifty separate violations of paragraph seven due to Levine's failure to advise patients or prospective patients that DNP was a highly toxic herbicide and not generally recognized as safe in the treatment of obesity. Following the issuance of the injunction, Levine spoke with approximately fifty or sixty persons, either by telephone or in person, who were "hoping that the case would go the other way, because the product was working for them." Levine, however, admittedly did not inform these persons about the fact that DNP was a herbicide, a highly toxic substance, and not recognized as safe in the treatment of obesity. Thus, the evidence was legally sufficient to support the district court's finding of fifty violations of paragraph seven.

■ In addition to contesting the total number of violations as determined by the district court, Bachynsky and the Clinic complain about the findings of fact and conclusions of law supporting the imposition of personal liability upon Bachynsky. Specifically, Bachynsky and the Clinic argue that no evidence exists to support the district court's findings that Levine was employed by both Bachynsky and the Clinic and that the corporate entity of the Clinic was Bachynsky's alter ego. In her testimony at trial, however, Levine referred to her employer as being Bachynsky as well as the Clinic. This testimony provides at least some evidence to support the fact finding that she was employed by both Bachynsky and the Clinic. *See Cook v. Hamer*, 158 Tex. 164, 169, 309 S.W.2d 54, 57–58 (1958). Thus, Bachynsky and the Clinic were liable for civil penalties due to Levine's violations of the injunction.[3] *Medical Slenderizing, Inc. v. State*, 579

**2.** The court of appeals determined the evidence to be factually insufficient with respect to five violations of paragraph six of the injunction. After liberally interpreting the points of error and arguments presented in their brief filed with the court of appeals, we cannot find any instance in which Bachynsky and the Clinic properly raised an attack on the factual insufficiency of the evidence. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982). We thus reverse the judgment of the court of appeals to the

extent that the evidence was factually insufficient to support the fact findings of the district court.

**3.** The district court also premised the individual liability of Bachynsky upon its finding that the Clinic was an alter ego of Bachynsky. Because Bachynsky is individually liable as Levine's employer in this instance, we need not address the evidentiary complaints raised with respect to the findings of alter ego.

**566**

S.W.2d 569, 574 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.).

■ Bachynsky and the Clinic finally contend that liability for civil penalties cannot be imposed upon them as a matter of law because Levine did not have actual knowledge of the terms of the injunction during the time period in which the violations occurred. However, Bachynsky and the Clinic admit to having actual notice of the terms of the injunction immediately following its issuance. We reject any notion that Bachynsky and the Clinic were entitled to withhold the terms of the injunction from Levine and then profess innocence for violations of the injunction unknowingly committed by that employee. Moreover, the imposition of civil penalties under section 17.47(e) of the DTPA does not require a showing that the injunction was "knowingly" violated by the enjoined parties. *Medical Slenderizing, Inc.*, 579 S.W.2d at 573.

■ Because the evidence was legally insufficient to support forty-four of the total 106 violations that were found by the district court, we must determine whether the remaining sixty-two violations of the injunction support the district court's imposition of the maximum civil penalties authorized by the DTPA. Section 17.47(e) permits the recovery of civil penalties up to $10,000 for each violation of the injunction, with the total penalty not to exceed $50,-000. We decline to make the assumption that the district court would have rendered an identical judgment upon finding sixty-two violations of the injunction. We therefore remand the cause to the district court for the limited purpose of determining the civil penalties to be assessed against Bachynsky and the Clinic for sixty-two violations of the permanent injunction.

We affirm in part, reverse in part, and remand the cause to the district court for further proceedings.

HECHT, J., not sitting.