In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00074-CV
______________________________


Â 
Â 
IN THE ESTATE OF PATRICIA RAYE HALBERT, DECEASED
Â 
Â 


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the County Court at Law 3
Smith County, Texas
Trial Court No. 30,319P


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Patricia Raye Halbert died in 2000. She left behind three putative wills


 and her immediate
familyâhusband, Robert L. Halbert (Robert), and three adult children, Robert Stephen Halbert
(Steve), Judith H. Trickey Box (Judy), and Patti Jane H. Carroll (Jane)âdivided on which of the
three wills should be probated. Robert urged the probate of Will Three, while Judy urged the probate
of Will Two. Ultimately, the dispute led to a mediation and a partial Mediated Settlement
Agreement (MSA),


 which is the subject of this appeal.
Â Â Â Â Â Â Â Â Â Â Â Â In competing motions for summary judgment arising from what became rather convoluted
litigation, Judy sought to enforce, and Robert sought to have declared unenforceable, the MSA. The
trial court granted Judy's motion for summary judgment to enforce the MSA and denied Robert's
motion.
Â Â Â Â Â Â Â Â Â Â Â Â In this opinion, we (A) set out a more detailed account of the factual and procedural history
of this case, and then (B) provide our decision and legal analysis: we hold that (1) the MSA is an
agreement not to probate a willâso it must provide an alternative distribution schemeâbut (2) the
MSA does not provide an alternative distribution schemeâso it is unenforceable. We reverse the
judgment of the trial court and render judgment that the MSA is unenforceable.
(A)Â Â Â Â Â Â FACTUAL AND PROCEDURAL HISTORY
Â Â Â Â Â Â Â Â Â Â Â Â Robert and Patricia Halbert were married and had three children: Steve, Judy, and Jane. In
1980, Patricia executed her first will (Will One). In this will, she named Robert the independent
executor and left all her property to him unless he predeceased her, in which case the property would
go to their three children. 
Â Â Â Â Â Â Â Â Â Â Â Â In 1986, Patricia executed a second will (Will Two), in which she named Judy as independent
executor and left all her property to the three children. Will Two made no provision for Robert. 
Â Â Â Â Â Â Â Â Â Â Â Â In 1997, Patricia executed a third will (Will Three), a holographic instrument which
republished Will One. Two months following the execution of Will Three, Patricia executed a deed
conveying all her real property to Robert (1997 Deed).


 This deed was recorded later in time,
approximately one month before Patricia's death on July 3, 2000. 
Â Â Â Â Â Â Â Â Â Â Â Â Robert applied to probate Will One pursuant to the terms of Will Three. Judy contested
Robert's application to probate Will One and applied to probate Will Two, in which all of Patricia's
property went to the children. Robert then filed an amended application to probate Will Three
which, he argued, republished Will One or, alternatively, revoked Will Two, causing Patricia's estate
to pass by intestacy. As we will discuss further at a later point, Jane, the youngest child, entered her
first appearance,


 stating that she was a beneficiary under Will Two and renouncing any right to
serve as personal representative. The parties then jointly moved to "issue an order requiring the
parties to submit this matter to mediation." The trial court granted this motion. 
Â Â Â Â Â Â Â Â Â Â Â Â On September 10, 2001, Robert and the three children attended a mediation from which came
the MSA. Boilerplate, introductory provisions of this MSA indicate that the parties "have agreed
to settle the above-referenced cause on the terms set forth herein, and enter into this Agreement on
said date." The MSA also provides that, "in the event of any dispute arising from the mediation or
this Agreement, the parties agree to submit same" to the named mediator. The MSA also included
the following provisions:
The parties understand that it is intended that there is to be a more
comprehensive compromise settlement agreement; releases, and/or further
documentation of this settlement; nevertheless, the parties intend this Agreement to
comply with the requirements of Rule 11 T.R.C.P., and Section 154.071, T.C.P.R.
Code.
Â 
Each party agrees to execute and file an agreed order dismissing all claims in
the above case with prejudice. 
Â 
The parties agree that, as soon as possible, a closing of this transaction shall
occur when the parties will exchange executed settlement documents and exchange
the consideration called for.

Â Â Â Â Â Â Â Â Â Â Â Â In the handwritten, sometimes difficult to read, substantive portions of the MSA, Judy agrees
to release any claims she has against the estate and against Robert in exchange for real property,
specifically Lot 2B, Block 1013 on Loop 323 in Tyler, Smith County, Texas, worth approximately
$1.2 million.
Â Â Â Â Â Â Â Â Â Â Â Â The MSA provides that Robert, Steve, and Jane "will resolve agreement between themselves
within 10 days." No one disputes the fact that Steve and Jane never reached an agreement with
Robert in this matter. Robert and Steve signed the MSA as defendants. Jane's attorney signed on
the defendant's side of the page, on Jane's behalf, with the limitation that the MSA was "approved
as to settlement with Jane."
Â Â Â Â Â Â Â Â Â Â Â Â The MSA appears to be intended as a settlement only of Judy's claims on the estate or against
her other family members.


 Jane had made an appearance in the will contest but had not taken an
adversarial role at that point. Later, although she had been treated in the pleadings as a defendant,
Jane filed her own contest to Robert's application to probate Will Three. 
Â Â Â Â Â Â Â Â Â Â Â Â Jane argued below that the trial court should deny Judy's motion for summary judgment. In
the trial court's final order, Jane is named as a defendant. In response to Judy's motion to enforce
the parties' MSA, Jane filed her answer and denied all of Judy's allegations. Summary judgment was
granted against Robert, Steve, and Jane, but Judy's award for attorney's fees was imposed against
only Robert and Steve.


 
Â Â Â Â Â Â Â Â Â Â Â Â However, despite her role in the proceeding below, Jane has filed an appellee's brief in this
matter and now argues to this Court that "the trial court was correct in granting [Judy's] traditional
and no evidence motion for summary judgment and in denying [Robert's] motion for summary
judgment." So, Jane now takes the position that the MSA is valid and enforceable.
Â Â Â Â Â Â Â Â Â Â Â Â Shortly after the MSA was signed, Judy sued to cancel the 1997 Deed.


 Judy's suit alleged
that the deed did not have a sufficient property description to be valid. Judy explains in her brief that
this suit was instituted at the request of Robert's attorneys, using pleadings prepared by them. The
record supports this contention as well through a letter from Robert's former attorney discussing the
strategy that Judy file this suit, and then the parties would settle that suit, resulting in title to Lot 2B
vesting in a manner "contemplated by the agreement." Judy's suit to cancel the 1997 Deed was
consolidated into the will contest, where it is still pending. 
Â Â Â Â Â Â Â Â Â Â Â Â On November 16, 2001, Judy also filed a pleading in the will contest alleging that she was
ready to perform under the MSA, that Robert had failed to comply with the MSA, and that the trial
court should order specific performance of the MSA ("Motion for Specific Performance of Mediated
Settlement Agreement"). Robert denied the MSA was a valid and enforceable contract and asserted
several affirmative defenses to Judy's claim for specific performance. Steve and Jane denied Judy's
allegations seeking to enforce the MSA. Later, however, Jane sought to probate Will Two, a change
in her prior strategic position. 
Â Â Â Â Â Â Â Â Â Â Â Â Robert sought summary judgment, attacking the validity of the MSA on the following
grounds:
1. Judy repudiated the MSA by filing her new lawsuit to cancel the 1997 Deed nine
days after mediation. 
Â 
2. The MSA is unenforceable as a family settlement agreement under In re Estate
of Morris, 577 S.W.2d 748 (Tex. App.âAmarillo 1979, writ ref'd n.r.e.). 
Â 
3. The MSA is not sufficiently certain to be an enforceable contract. 
Jane opposed those grounds and sought summary judgment against Robert, Steve, and Jane, seeking
to enforce the MSA on two grounds:
1. Robert, Steve, and Jane breached the MSA, entitling Judy to specific performance. 

2. There is no evidence to support Robert's affirmative defenses. 

Robert, Steve, and Jane opposed Judy's effort to obtain summary judgment. 
Â Â Â Â Â Â Â Â Â Â Â Â The trial court denied Robert a summary judgment and granted Judy a summary judgment. 
It also ordered Robert, Steve, and Jane to 
each specifically perform the terms of the [MSA] by executing the deed or deeds
called for by such agreement to [Judy] conveying all of the Defendants' right, title,
and interest to [the Lot] contemporaneously with the tender to Defendants of a
written, signed document or documents by which she release any claims she has
against [Robert] and the Estate of [the Decedent] and assumes the tax liability agreed
upon in such agreement.

The trial court further provided, "Trial is set on the claim of [Judy] for attorney's fees on the ___ day
of _________, 2002." The trial court failed to set any date for such trial. Robert appealed the order
to the Twelfth Court of Appeals in Tyler, but that court dismissed the appeal, holding that the order
was not a final probate order subject to appeal.


 
Â Â Â Â Â Â Â Â Â Â Â Â A jury trial was held, and as a result the trial court awarded attorney's fees to Judy against
Robert and Steve. Each party then submitted a proposed judgment and objected to the other's
proposal. Ultimately, the trial court, again, adopting Jane's proposed judgment, signed its "Final
Judgment Regarding Mediated Settlement Agreement." The judgment repeats many of the same
conclusions contained in the earlier order and, of course, adds the jury's verdict regarding attorney's
fees. It also addresses matters not covered by the MSA or by the parties' motions for summary
judgment. 
(B)Â Â Â Â Â Â DECISION AND LEGAL ANALYSIS
Â Â Â Â Â Â Â Â Â Â Â Â We review summary judgments de novo. Tex. R. Civ. P. 166a(c); Rolling Lands Invs., L.C.
v. Northwest Airport Mgmt., L.P., 111 S.W.3d 187, 193 (Tex. App.âTexarkana 2003, pet. denied). 
The movant has the burden of showing that there is no genuine issue of material fact and that he or
she is entitled to judgment as a matter of law. Id. Every reasonable inference must be indulged in
favor of the nonmovant. Id. When both parties file motions for summary judgment and the trial
court grants one and denies the other, we review both motions, determine all questions presented,
and render the judgment the trial court should have rendered. Id.
(1) The MSA Is an Agreement Not To Probate a Will
Â Â Â Â Â Â Â Â Â Â Â Â A family settlement agreement is an alternative method of administration in Texas that is a
favorite of the law. See Shepherd v. Ledford, 962 S.W.2d 28, 32 (Tex. 1998); In re Estate of
Hodges, 725 S.W.2d 265, 267 (Tex. App.âAmarillo 1986, writ ref'd n.r.e.).
Â Â Â Â Â Â Â Â Â Â Â Â Robert cites In re Estate of Morris, 577 S.W.2d 748, to support his argument that the MSA
is unenforceable since it does not meet the requirements of a valid family settlement agreement.
Â Â Â Â Â Â Â Â Â Â Â Â In Morris, the decedent's first will devised all of her property to her surviving husband. Id.
at 751. This will was admitted to probate. Id. A second will, executed three years later, left only
$1.00 to her surviving husband, and the remaining property in her estate to their two children. Id. 
Soon after the decedent's funeral, the decedent's two children had agreed to destroy the second will
because it would upset their father. Id. at 751. Later, the decedent's daughter applied to probate this
second will. Id.
Â Â Â Â Â Â Â Â Â Â Â Â Addressing this situation in terms of the family settlement doctrine, the Amarillo court held
that the two children had agreed to not probate the second will but had failed to agree to an alternate
plan of distribution and that, therefore, the agreement was ineffective, as a family settlement
agreement, to deny probate of the second will. Id. at 756. The court emphasized that an agreement
not to probate a will must be accompanied by an agreement as to the distribution of the property. 
Id. The court held that the children's knowledge of the 1965 will was insufficient to constitute an
agreement between the two of them as to the distribution of the property. Id.
Â Â Â Â Â Â Â Â Â Â Â Â The family settlement doctrine involves three basic principles: the decedent's right to make
a testamentary disposition,


 the beneficiaries' right to convey their rights,


 and balancing those
competing rights by requiring an agreement to an alternative distribution plan.



Â Â Â Â Â Â Â Â Â Â Â Â Caselaw on the family settlement doctrine supports the conclusion that the family settlement
doctrine is applicable generally when there is a disagreement on the distribution of an estate and the
beneficiaries enter into an agreement to resolve the controversy. Judy advances at least two
arguments why the doctrine does not apply here.
Â Â Â Â Â Â Â Â Â Â Â Â First, Judy argues that, since the MSA contemplates that a will eventually will be probated,
the family settlement doctrine does not apply here. This positionâthat the family settlement
doctrine is only applicable when the parties agree to not probate any willâis inconsistent with
caselaw. Morris applied the family settlement doctrine on very similar circumstances, when the
parties agreed to not probate one will and left another will to be probated. See id. at 756â57. The
fact that the parties here intend to probate one of the three wills is not relevant to the applicability
of the doctrine.


 The relevant consideration is whether the MSA will have some impact on the
distribution of the estate.
Â Â Â Â Â Â Â Â Â Â Â Â Second, Judy argues that the doctrine does not apply because the land to be transferred is,
arguably, not estate property. Since it is unclear whether her father owned Lot 2B, Block 1013 by
virtue of the 1997 Deed, Judy maintains, this dispute does not involve an agreement not to probate
a will and to redistribute estate property.


 Thus, she contends, this matter falls outside the family
settlement doctrine. It is important, however, to look at the nature of the dispute and the attempted
resolution itself, rather than the nature of the consideration underlying the agreement or the property
being transferred pursuant to the agreement. No matter the ownership of the property constituting
consideration, the potential beneficiaries are at odds with one another regarding the distribution of
Patricia's estate. Judy was, in effect, exchanging her claims to the estate for the real property.
Â Â Â Â Â Â Â Â Â Â Â Â We also point out the intended effect of the MSA. The parties purportedly entered into the
MSA to "to settle the above-referenced cause," meaning the pending will contest. That is, the parties
are attempting to settle their differences over the distribution of Patricia's estate. And Judy's
agreement to dismiss her claims in the will contest and to release any claim against her mother's
estate are the equivalent of abandoning her application to probate Will Two and relinquishing any
right she might have asserted under Will Two.
Â Â Â Â Â Â Â Â Â Â Â Â The MSA certainly invokes the family settlement doctrine. It necessarily involves an
agreement, by at least one of the parties, to not probate at least one will, altering the distribution of
the estate. In fact, the family settlement doctrine has been applied when there was only "a threat"
of a will contest by the beneficiaries under an earlier will if the later will were probated. Fore v.
McFadden, 276 S.W. 327, 329 (Tex. Civ. App.âTexarkana 1925, writ dism'd). Here, the
controversy had proceeded to a formal judicial proceeding on the will contest issue. So, this
situation is the type of situation for which the family settlement doctrine was designed. In order to
settle the pending controversy, the family would have had to enter into an agreement that meets the
specific requirements and addresses the policy concerns of the family settlement doctrine. 
Otherwise, the MSA is unenforceable and cannot serve as a substitute for Patricia's testamentary
disposition, even though the parties disagree as to her intent.
Â Â Â Â Â Â Â Â Â Â Â Â Here, as there was in Morris, there is clearly a controversy over which of Patricia's wills
should be probated. By the terms of the MSA, "[e]ach party agree[d] to execute and file an agreed
order dismissing all claims in [cause number 30,319, the will contest], with prejudice." This general
provision would have the effect of Judy relinquishing her claim that Will Two should be probated,
leaving the estate to pass by the terms of Will One or, in the alternative, to pass through intestate
succession in accordance with Robert's amended application. It appears that it would also have the
effect of Robert withdrawing his application to probate Wills One and Three. Judy separately agreed
to relinquish any claim in the estate or against her father in exchange for the land in question. So,
this constitutes a specific agreement between at least two of the parties to not probate Will Two.


 
Â Â Â Â Â Â Â Â Â Â Â Â Reading the MSA, we see that there is an agreement not to probate a will. In fact, it could
be said that there are several agreements not to probate a will; it is just unclear which will, if any,
would be probated ultimately. The uncertainties, however, are more relevant to the second element
of the family settlement doctrineâthat the agreement also provide an alternate plan of distribution
of estate property.
(2) The MSA Does Not Provide an Alternative Distribution Scheme
Â Â Â Â Â Â Â Â Â Â Â Â The law allows for an implied plan of distribution within a family settlement agreement. But
courts will not readily imply such a plan for the parties:
[I]t must appear that an [implied] agreement for the disposition of the property was
so clearly within the contemplation of [the parties] that they deemed it unnecessary
to express it and, therefore, omitted to do so.
Morris, 577 S.W.2d at 757. The parties can even agree to not probate a will and to allow the estate
to pass through the intestacy statutes. See Cook v. Hamer, 158 Tex. 164, 167, 309 S.W.2d 54, 56
(1958); Hopkins v. Hopkins, 708 S.W.2d 31, 32 (Tex. App.âDallas 1986, writ ref'd n.r.e.). In such
situations, the parties, essentially, agreed to let the law redistribute the estate.
Â Â Â Â Â Â Â Â Â Â Â Â Here, we must determine whether the putative beneficiaries' agreements in the MSA
constitute a sufficiently clear plan to distribute the estate. Since the MSA's provisions could be read
to provide for distribution in accordance with the terms of Will One, in accordance with intestate
succession, or solely in accordance with agreements contemplated yet nonexistent among the parties,
the MSA leaves open a number of possible, but unclear, ways the estate might be distributed if the
MSA were enforced. We examine those possibilities.
Â Â Â Â Â Â Â Â Â Â Â Â Probate of Will One. Since Judy was the only child with a clearly contrary position at the
time of the MSA and since Robert did come to an agreement with her, it could be said that her
separate agreement to relinquish her claims against the estate and against Robert would lead to the
conclusion that the estate would pass as it would have absent Judy's contest, under the terms of Will
One. While this reading of the MSA and interpretation of an alternate plan of distribution would be
the most straightforward, it is undermined by the clear references in the MSA that a future agreement
was contemplated, yet not ever reached, among Robert, Steve, and Jane. Additionally, Jane's
signature limiting her agreement to only the agreement made with Judy appears to reserve her right
to enter her own, different, agreement with her father, even if such would conflict with the MSA. 
All parties agree that no such contemplated agreement was ever reached. We must conclude that the
parties, in the MSA, did not agree to distribute Patricia's estate in a manner consistent with Will One.
Â Â Â Â Â Â Â Â Â Â Â Â Intestate Succession. If there is no will to be probated, then it could be said that the estate
would pass through intestate succession. This method of distribution could be a logical reading of
the MSA, since all parties agree to dismiss their claims in the will contest action. But we cannot
imply such an agreement to distribute the estate in this manner. Such a plan was "not so clearly
within the contemplation of [the parties] that they deemed it unnecessary to express it." Estate of
Morris, 577 S.W.2d at 757. In fact, the parties did not contemplate distribution through intestate
succession. First, the MSA clearly references other, future, agreements to be made.


 Also, we note
that Jane later filed her own application to probate Will Two. Finally, Judy urged at oral argument
before this Court that one of the wills will eventually be probated.
Â Â Â Â Â Â Â Â Â Â Â Â Distribution by Future Agreement Only. Perhaps, the most sound reading of the MSA would
be that the parties contemplated probating no will, but would instead resolve the dispute by a future
agreement. Of course, even if this were the case, all parties now agree that the remaining anticipated
agreement was never reached, leaving, in fact, absolutely no plan of distribution. 
Â Â Â Â Â Â Â Â Â Â Â Â In sum, since the MSA leaves these uncertainties, we conclude that it fails to satisfy the rather
stringent requirements of the family settlement doctrine that an agreement provide an alternate plan
for distributing estate property.
Â Â Â Â Â Â Â Â Â Â Â Â We sustain Robert's first point of error. The MSA is unenforceable as a matter of law.


 Due
to the disposition of that issue, it is unnecessary to address the remaining points of error. 
Â Â Â Â Â Â Â Â Â Â Â Â Accordingly, we reverse and render judgment that Judy take nothing by her action to enforce
the MSA and to be paid her attorney's fees in that action.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â March 17, 2005
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â August 18, 2005




:1'>   Calhoun
argues that the trial court erred in allowing Lynn to question her about the
details of a furniture contract Johnson entered into in 2005.Â  Specifically, Calhoun claims that the trial
court should not have permitted Lynn to reopen the evidence because the
furniture contract Âwas sitting on the table in AppelleeÂs file throughout the
entire trialÂ and ÂAppellee clearly was not diligent in presenting this
evidence to the jury.ÂÂ  

Â Â Â Â Â Â Â Â Â Â Â  While
it is true that diligence in obtaining evidence is a factor which the trial
court may consider in determining whether to reopen the evidence, the trial
court also considers whether: Â (1) the
evidence is decisive; (2) reception of such evidence will cause undue delay;
and (3)Â  granting the motion will cause an injustice.Â  Hernandez
v. Lautensack, 201 S.W.3d 771, 778Â79 (Tex. App.âFort Worth 2006,
pet. denied).Â  

Â Â Â Â Â Â Â Â Â Â Â  Lynn
represented himself at trial.Â  The trial
court may have concluded that evidence of a contract entered into by Johnson
after the execution of the deed, coupled with CalhounÂs testimony that she was
unaware her mother could not enter into such a contract in 2005, was highly
relevant.Â  The court was free to decide
that the evidence was not repetitive, would not cause undue delay, and that
granting the motion to reopen would not cause injustice.Â  The court could have also noted caselaw
directing courts to exercise discretion liberally in the interest of permitting
both sides to fully develop the case.Â  See Oechsner, 669 S.W.2d at 366-67.Â  With these considerations in mind, we cannot
say that the trial court abused its discretion in reopening the evidence. 

Â Â Â Â Â Â Â Â Â Â Â  CalhounÂs
second point of error is overruled.[1]

III.Â Â Â Â Â Â  Calhoun Failed to
Preserve Error Regarding Opinion as to Signature Comparison

Â Â Â Â Â Â Â Â Â Â Â  Calhoun
complains that the trial court Âerred in not allowing [her] to question witness
on comparing the signature on the deed with a document the parties agreed was a
document signed by Ola Mae Johnson.ÂÂ 
When asked to compare the signatures on the furniture contract to the
deed, the following transpired:

Â Â Â Â Â Â Â Â Â Â Â  Q.Â Â Â Â Â Â Â  [By Mr. Bernoudy]Â  And I know youÂre not a handwriting expert,
but can you look at these two signatures and are they the same?

Â 

Â Â Â Â Â Â Â Â Â Â Â  A.Â Â Â Â Â Â Â  [By Calhoun]Â  It doesnÂt look like it.

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  MR. LYNN JOHNSON:Â  I want to object here, Your Honor.Â  I want to object.Â  Because there are other documents that Mother
signed, like power of attorneys where her signature varied.Â  And to zero in on those two documents and
made [sic] a determination, I feel would be biased towards me. 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  THE COURT:Â  IÂm going to sustain that objection. 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  MR. BERNOUDY:Â  Nothing further, Your Honor. 

Â 

Although the trial court sustained
an objection after the witness answered the question, CalhounÂs answer to the
question was not struck, and it was before the jury.[2]Â  

Â Â Â Â Â Â Â Â Â Â Â  We
are unclear about CalhounÂs complaint.Â 
Presumably, Calhoun complains of exclusion of some evidence.Â  To adequately and effectively preserve error,
a party complaining that evidence was improperly excluded must make an offer of
proof that shows the nature of the evidence specifically enough so that the
reviewing court can determine its admissibility unless the context of the
question made apparent the substance of excluded testimony. Â See Tex. R. App. P.Â 33.1; Tex. R. Evid. 103(a)(2).Â  Calhoun does not claim that she intended to
demonstrate that the signature on the deed was not her motherÂs.Â  There was no dispute that the signature on
the notarized deed belonged to Johnson.Â 
Instead, the only issue at trial was whether Johnson had the mental
capacity to sign the deed.Â  Further, as
we have stated, Calhoun did testify that the two signatures did not look alike.
Â The last point of error is
overruled.Â  

IV.Â Â Â Â Â Â  CONCLUSION


Â Â Â Â Â Â Â Â Â Â Â  We
affirm the trial courtÂs judgment. 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Jack
Carter

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  August 4, 2011

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  August 11, 2011











[1]Within
this same point of error, Calhoun argued multifariously that the furniture
contract was impermissible hearsay because the business record exception had
not been established and did not meet the ÂCode of Evidence.ÂÂ  We overrule CalhounÂs argument as moot; the
furniture contract was not introduced or admitted into evidence.Â  Rather, Lynn asked Calhoun questions about
the transaction without objection.





[2]Calhoun
complains that the Texas Rules of Evidence would allow her to authenticate her
motherÂs handwriting.Â  Authentication is
not the issue in this case as the deed had already been admitted into
evidence.Â