In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00100-CR

                                                ______________________________

 

 

                                GEORGE LESLIE SANDERS,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 196th
Judicial District Court

                                                              Hunt County, Texas

                                                            Trial
Court No. 25025

 

                                                           
                                       

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM 
OPINION

 

            George
Leslie Sanders appeals from his convictions on three charges of delivery of methamphetamine.
 Sanders filed a single brief with this
Court, in which he raises issues common to all of his appeals.[1]  Sanders argues he was denied due process by
allegedly false misrepresentations made by the State’s witness with the goal of
inflaming the jury.  He also alleges the
trial court abused its discretion in denying motions for mistrial, and in
allowing the State to question him about previous convictions used for
enhancement during punishment.  

            We
addressed these issues in detail in our opinion of this date on Sanders’ appeal
in cause number 06-09-00098-CR.  For the
reasons stated therein, we likewise conclude that error has not been shown in
this case.

            We
affirm the trial court’s judgment.

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          February
24, 2010

Date Decided:             February
26, 2010

 

Do Not Publish











[1]Sanders appeals from three
convictions for delivery of methamphetamine, cause numbers 06-09-00098-CR
through 06-09-00100-CR. 








ecute and file an agreed
order dismissing all claims in [cause number 30,319, the will contest], with prejudice." This general
provision would have the effect of Judy relinquishing her claim that Will Two should be probated,
leaving the estate to pass by the terms of Will One or, in the alternative, to pass through intestate
succession in accordance with Robert's amended application. It appears that it would also have the
effect of Robert withdrawing his application to probate Wills One and Three. Judy separately agreed
to relinquish any claim in the estate or against her father in exchange for the land in question. So,
this constitutes a specific agreement between at least two of the parties to not probate Will Two.


 
            Reading the MSA, we see that there is an agreement not to probate a will. In fact, it could
be said that there are several agreements not to probate a will; it is just unclear which will, if any,
would be probated ultimately. The uncertainties, however, are more relevant to the second element
of the family settlement doctrine—that the agreement also provide an alternate plan of distribution
of estate property.
(2) The MSA Does Not Provide an Alternative Distribution Scheme
            The law allows for an implied plan of distribution within a family settlement agreement. But
courts will not readily imply such a plan for the parties:
[I]t must appear that an [implied] agreement for the disposition of the property was
so clearly within the contemplation of [the parties] that they deemed it unnecessary
to express it and, therefore, omitted to do so.
Morris, 577 S.W.2d at 757. The parties can even agree to not probate a will and to allow the estate
to pass through the intestacy statutes. See Cook v. Hamer, 158 Tex. 164, 167, 309 S.W.2d 54, 56
(1958); Hopkins v. Hopkins, 708 S.W.2d 31, 32 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). In such
situations, the parties, essentially, agreed to let the law redistribute the estate.
            Here, we must determine whether the putative beneficiaries' agreements in the MSA
constitute a sufficiently clear plan to distribute the estate. Since the MSA's provisions could be read
to provide for distribution in accordance with the terms of Will One, in accordance with intestate
succession, or solely in accordance with agreements contemplated yet nonexistent among the parties,
the MSA leaves open a number of possible, but unclear, ways the estate might be distributed if the
MSA were enforced. We examine those possibilities.
            Probate of Will One. Since Judy was the only child with a clearly contrary position at the
time of the MSA and since Robert did come to an agreement with her, it could be said that her
separate agreement to relinquish her claims against the estate and against Robert would lead to the
conclusion that the estate would pass as it would have absent Judy's contest, under the terms of Will
One. While this reading of the MSA and interpretation of an alternate plan of distribution would be
the most straightforward, it is undermined by the clear references in the MSA that a future agreement
was contemplated, yet not ever reached, among Robert, Steve, and Jane. Additionally, Jane's
signature limiting her agreement to only the agreement made with Judy appears to reserve her right
to enter her own, different, agreement with her father, even if such would conflict with the MSA. 
All parties agree that no such contemplated agreement was ever reached. We must conclude that the
parties, in the MSA, did not agree to distribute Patricia's estate in a manner consistent with Will One.
            Intestate Succession. If there is no will to be probated, then it could be said that the estate
would pass through intestate succession. This method of distribution could be a logical reading of
the MSA, since all parties agree to dismiss their claims in the will contest action. But we cannot
imply such an agreement to distribute the estate in this manner. Such a plan was "not so clearly
within the contemplation of [the parties] that they deemed it unnecessary to express it." Estate of
Morris, 577 S.W.2d at 757. In fact, the parties did not contemplate distribution through intestate
succession. First, the MSA clearly references other, future, agreements to be made.


 Also, we note
that Jane later filed her own application to probate Will Two. Finally, Judy urged at oral argument
before this Court that one of the wills will eventually be probated.
            Distribution by Future Agreement Only. Perhaps, the most sound reading of the MSA would
be that the parties contemplated probating no will, but would instead resolve the dispute by a future
agreement. Of course, even if this were the case, all parties now agree that the remaining anticipated
agreement was never reached, leaving, in fact, absolutely no plan of distribution. 
            In sum, since the MSA leaves these uncertainties, we conclude that it fails to satisfy the rather
stringent requirements of the family settlement doctrine that an agreement provide an alternate plan
for distributing estate property.
            We sustain Robert's first point of error. The MSA is unenforceable as a matter of law.


 Due
to the disposition of that issue, it is unnecessary to address the remaining points of error. 
            Accordingly, we reverse and render judgment that Judy take nothing by her action to enforce
the MSA and to be paid her attorney's fees in that action.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          March 17, 2005
Date Decided:             August 18, 2005